# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THOMAS PORWITZKY and
MATTHEW JONES,

      Plaintiffs,

v.                                                                    Case No. 1:25-cv-00280-MIS-LF

ANDREW ROMKOWSKY,
in his individual and official capacities,
MARISA J. MARTINEZ,
in her individual and official capacities,
JONATHAN BARELA,
in his individual and official capacities,
CARLOS GIDINO,
in his individual and official capacities, and
CITY OF ALBUQUERQUE,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF ALBUQUERQUE'S MOTION TO COMPEL

This matter comes before the Court on defendant City of Albuquerque's (the "City")

Motion to Compel, filed August 26, 2025. Doc. 40. Plaintiffs stated that they opposed the

motion, *id.* at 1, but they did not respond to the motion, and the deadline to do so has passed.

Having reviewed the City's filing and the applicable law, the Court grants in part and denies in

part the motion to compel as described below.

## BACKGROUND[1]

On November 20, 2025, plaintiffs Thomas Porwitzky and Matthew Jones filed their amended complaint. Doc. 43. Appearing pro se, they allege violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution by defendants Andrew Romkowsky, Marisa J. Martinez, Jonathan Barela, and Carlos Gidino in their individual and official capacities, as well as against the City. *Id.* at 1. Some of their allegations arise from a September 2024 visit from Officers Barela and Gidino to Mr. Porwitzky's property, which may have been to investigate a disturbance, conduct a welfare check, or confirm whether Mr. Jones resided there. *Id.* at 5–9. Others arise because, in January 2025, Mr. Porwitzky and Mr. Jones visited "the APD building" with the intention of arranging a meeting with the chief of police to ask questions about the oath of office, if any, that police officers swear; they had sought public records on this matter previously. *Id.* at 11. Plaintiffs claim that after various inquiries and an "intense discussion," they were told that they "would be trespassed from the APD building if they did not immediately leave the building." *Id.* at 13. They state that they relocated to City Hall, where they were then approached by defendants Martinez and Romkowsky, among others, who "stated that Plaintiffs were now creating a disturbance in another government building and that they were being trespassed from this building[] as well." *Id.* at 13–14. They "were issued a 90-day trespass from the APD publicly owned building at 400 Roma Avenue in Albuquerque, New Mexico," after which they exited the building. *Id.*

---

[1] Plaintiffs filed their original complaint on March 18, 2025, but the Court permitted them to file an amended complaint in November 2025. Because the First Amended Complaint is the operative complaint—even though it was filed after the City filed its Motion to Compel—the Court provides the allegations in the First Amended Complaint as background.

The complaint contains causes of action for 1) Fourth Amendment violations against Officers Barela and Gidino for an unreasonable search of Mr. Porwitzky's property; 2) First Amendment violations against Defendants Romkowsky and Martinez for the defendants' alleged retaliation against the plaintiffs' efforts to seek public records; 3) a First Amendment claim against the City for "permitt[ing] or otherwise ratif[ying the] practice of permitting its employees to withhold records and retaliate against those that persist in their attempts"; and 4) a Fourteenth Amendment due process claim against the City because the city "provides no procedures or opportunity for Plaintiffs to challenge the validity of the Criminal Trespass Warnings they were given." *Id.* at 15–18.

## DISCUSSION

The City served plaintiffs with certain discovery requests to which the plaintiffs have objected or which they failed to supplement when asked. The Court will address each in turn.

Interrogatory No. 1

Interrogatory No. 1 states, "State your full name, address, Social Security Number, marital status, date of birth and place of birth, and all other names by which you have ever been known." Doc. 40-1 at 2; Doc. 40-3 at 2. Both plaintiffs objected to providing their social security numbers, dates of birth, and places of birth on the grounds that these matters were not relevant and they believed the City sought this information for an improper purpose. Doc. 40-1 at 2; Doc. 40-3 at 2. While they did not object to the request for other names by which they have been known, neither plaintiff included this information in his answer. Doc. 40-1 at 2; Doc. 40-3 at 2.

Basic identifying information, including sensitive information such as an individual's social security number, generally is appropriate subject matter for discovery. *Jones v. J.C. Penney's Dep't Stores, Inc.*, 228 F.R.D. 190, 197 n.13 (W.D.N.Y. 2005) ("As a matter of

relevancy . . . prevailing caselaw supports the propriety of Ms. Snyder's question seeking Plaintiff's social security number." (collecting cases)). Certainly, this information generally is private in one's personal life, but by initiating a lawsuit, a plaintiff creates a situation in which disclosure of personal information becomes necessary for the defendant to litigate fairly. *See Gonzales v. Goodyear Tire & Rubber Co.*, No. 6:05-cv-00941-BB-LFG, 2006 WL 8444095, at *5 (D.N.M. July 28, 2006) ("A plaintiff may not assert a claim for damages and then seek to prevent the other side from obtaining information relevant to the claim. . . . In this case, Claimant's privacy interest in their Social Security number and driver's license information does not outweigh Goodyear's right to defend itself. Indeed, in the absence of claims, there would be no need and no right to obtain this information.").

Identifying information such as a social security number, a date of birth, and a place of birth allows a defendant to research a plaintiff's criminal and civil litigation history, matters which reasonably may bear on a plaintiff's credibility before a jury in the event of a trial. For example, a plaintiff with a long history of criminal convictions for fraud and perjury may be a less "believable" witness in the eyes of a jury than one without a history of dishonesty. The City has clarified that it seeks only the last four digits of the plaintiffs' social security numbers, Doc. 40-5 at 1; Doc. 40-6 at 1, which lightens the burden on plaintiffs' privacy while still requesting relevant information. Additionally, investigating the credibility of potential witnesses is a proper purpose; plaintiffs have provided no evidence of any improper motives the City may have in seeking this information. *See Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, No. 1:09-cv-01113-WJ-KBM, 2010 WL 11552903, at *1 ("A 'proper' objection is one that is tailored to the interrogatory, not a conclusory objection such as 'overbroad' or 'unduly burdensome,' which neglects to say *why* the interrogatory is subject to that objection.") (Puglisi, Mag. J.) (magistrate

4

judge's holdings adopted, *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, No. 1:09-cv-01113-WJ-KBM, 2010 WL 11552917 (D.N.M. June 24, 2010)).

For the above reasons, the Court orders Mr. Porwitzky and Mr. Jones to supplement their interrogatory responses with the last four digits of their social security numbers, their full dates and places of birth, and all other names by which they have ever been known (or, if they have not been known by any other names, a statement of that fact).[2]

Interrogatory No. 2 (Mr. Jones only)

Interrogatory No. 2 states, "Please list your current place of employment, the dates of your employment, rate of pay, name of supervisor over the past 10 years." Doc. 40-2 at 2. Mr. Jones objected to this interrogatory as irrelevant and stated that the City sought this information for an improper purpose. *Id.* at 3. "Notwithstanding these objections," he adds that he "has not been employed since prior to the date of the alleged incidents specific to this action." *Id.* The City seeks to compel Mr. Jones to disclose this information because "[t]his information is relevant to the Plaintiff's current claims, his credibility and his claim for damages." Doc. 40 at 3.

Requests for a plaintiff's employment history are common in cases where lost wages or lost employment are at issue. *See Quarrie v. Wells*, No. 2:17-cv-00350-MV-GBW, 2020 WL 1514798, at *5 (D.N.M. Mar. 30, 2020) (holding that "Plaintiff's employment history has clear relevance to his claims" for loss of employment and loss of income); *but see Uroza v. Salt Lake Cnty.*, No. 2:11-cv-00713-DAK-EJF, 2014 WL 670236, at *5 (D. Utah Feb. 20, 2014) (in a case

---

[2] If plaintiffs have concerns about the handling of this private information, they may confer with defendants about a stipulated protective order from the Court (or, if the parties cannot agree on the scope of a protected order after a good faith effort to confer, plaintiffs may file an opposed motion seeking a protective order). If an order is entered designating certain information confidential, the parties still must provide this information in discovery; the protective order merely designates certain information as confidential to prevent it from being disclosed or used *outside of the case*. Confidential information is not the same as privileged information.

where plaintiff did not seek employment-related damages, employment history lacks relevance). Here, however, plaintiffs ask only for "compensatory damages," Doc. 43 at 19, without reference to any employment- or wage-related losses. The Court therefore has no reason to believe that Mr. Jones' employment history is relevant to his current claims or his claim for damages. It also is unclear how his employment history might shed light on his credibility; if a link between the two exists, the City has not discussed it.

Accordingly, the Court denies the City's motion with respect to Interrogatory No. 2.

Interrogatory No. 3

Interrogatory No. 3 asks detailed questions about the plaintiffs' litigation history, "including divorce, bankruptcy collection, disciplinary proceeding, workers' compensation, disability or foreclosure proceedings." Doc. 40-1 at 3; Doc. 40-3 at 3. Both plaintiffs objected to the interrogatory as "overly broad, unduly burdensome, and unlikely to lead to any relevant facts and irrelevant to any claims of Plaintiff or defenses of the opposing party." Doc. 40-1 at 4; Doc. 40-3 at 4. Case law varies with respect to this question. *Compare Smith v. Hillshire Brands*, No. 13-cv-2605-CM, 2014 WL 2804188, at *3 (D. Kan. June 20, 2014) ("The court agrees with defendant that information about plaintiff's litigation history is relevant because it could lead to the discovery of admissible evidence regarding plaintiff's credibility and claim for damages.") *with Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-cv-01404-JWL, 2011 WL 13233153, at *6 (D. Kan. Sept. 28, 2011) ("Defendants have not explained how evidence of Plaintiff's general litigation history would be probative of any issue in this case," rendering interrogatory irrelevant).

In this instance, the Court will allow the interrogatory. Discovery is a broad stage of the litigation, and "[i]nformation within [the] scope of discovery need not be admissible in evidence

to be discoverable." FED. R. CIV. P. 26(b)(1). The plaintiffs' litigation history may reveal evidence about their history of truthfulness, as well as their preexisting medical conditions or injuries in a workers' compensation or disability case (which are pertinent to damages because of Mr. Porwitzky's allegations of stress-related treatment through the Veterans' Administration, *see* Doc. 43 at 15).

Accordingly, the Court grants the City's motion to compel with respect to Interrogatory No. 3.

Interrogatory No. 4

Interrogatory No. 4 states,

> Identify every individual with whom you have communicated about the subject matter of this lawsuit, including the form or type of such communication (i.e., orally or in writing), the date of such communication, a summary of the communication, the purpose for the communication, and whether or not it was recorded. Also, please provide the address and telephone number of each person listed. Please indicate which of these individuals are likely to testify at trial.

Doc. 40-1 at 4; Doc. 40-3 at 4. Plaintiffs objected to the interrogatory as a "compound, conjunctive, or disconjunctive [sic] question" as well as "overbroad and unduly burdensome." Doc. 40-1 at 4–5; Doc. 40-3 at 4–5. Notwithstanding their objections, each listed his co-plaintiff and Mr. Porwitzky's wife, Wendy Porwitzky. Doc. 40-1 at 5; Doc. 40-3 at 5. The City seeks "the date of the communication, a summary of the communication and the purpose of the communication." Doc. 40 at 4. However, it does not discuss plaintiffs' objections except to state that they are "baseless." Doc. 40-5 at 1, Doc. 40 at 4.

As an initial matter, "the party filing the motion to compel has the initial burden of addressing each boilerplate objection in its motion to compel." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 671 n.37 (D. Kan. 2004). It is only after the moving party bears this initial burden that the objecting party bears the burden of justifying its objections. *Id.* Furthermore, in

this instance the Court finds that it would be unduly burdensome for the co-plaintiffs to list every time they spoke to each other about the case they are litigating together, summarize each communication, and state the purpose of each communication. Similarly, communications between Mr. Porwitzky and his wife on the matter of his lawsuit, and between Mr. Jones and Mrs. Porwitzky given that Mr. Jones is residing in their home, likely are voluminous and also would be unduly burdensome to produce. The contact information that plaintiffs have provided is sufficient for defendants to contact Mrs. Porwitzky if they have questions for her. Requiring plaintiffs to list every relevant communication with Mrs. Porwitzky would be a significant burden and is unlikely to lead to the discovery of additional relevant evidence beyond the information that plaintiffs' answer already provides.

For the above reasons, the Court denies the City's motion to compel with respect to Interrogatory No. 4.

Interrogatory No. 5

Interrogatory No. 5 states,

Please list all damages you claim to have suffered as a result of the Defendants' alleged conduct. With regard to each, please list all evidence in your possession which supports your claim of damages, the manner in which you calculated these alleged damages, and all efforts you have made to mitigate your damages in this matter.

Doc. 40-1 at 5; Doc. 40-3 at 5. Plaintiffs object to the interrogatory as unduly burdensome and oppressive because it would involve restating matters already discussed in the complaint; they refer to the complaint and state that the damages therein "are estimates as the actual damages calculation must be performed by the Jury." Doc. 40-1 at 6; Doc. 40-3 at 6.

A clear statement of damages, as well as the underlying calculations and evidence surrounding those damages, is critical for the City to prepare a full defense. In the event of a

trial, the final damages calculation will be performed by the jury, but the City must understand exactly what damages the plaintiffs are claiming and why in order to present evidence and argument to the jury about whether those damages are appropriate. The plaintiffs cannot simply claim in their complaint that they are entitled to "general and compensatory damages according to federal law" and punitive damages of $500,000.00 but refuse to provide any information or context regarding what the compensatory damages might be or how the $500,000.00 in punitive damages was determined. *See* Doc. 43 at 19; *see also Gonzales*, 2006 WL 8444095, at *5 ("A party may not assert a claim for damages and then seek to prevent the other side from obtaining information relevant to the claim, thereby depriving the opposing party of an opportunity to evaluate the claim for settlement or alternatively, to be prepared to meet the proofs at trial. Plaintiffs who voluntarily come into court and seek economic damages must be prepared to prove their economic loss[.]").

For the above reasons, the Court grants the City's motion to compel regarding Interrogatory No. 5.

Interrogatory No. 6 (Mr. Jones only)

Interrogatory No. 6 states, "Please provide a list of your addresses over the last 10 years." Doc. 40-1 at 6. Mr. Jones objected to the interrogatory as "beyond the scope of discovery" and "[i]rrelevant to any claims or defenses." *Id.*

The Court disagrees. Addresses may be pertinent generally when damages are at issue. *See Quarrie*, 2020 WL 1514798, at *3–4 (finding a request for ten years of addresses relevant to financial status and therefore damages, and not unduly burdensome or disproportionate to the needs of the case). And in this case specifically, the complaint contains allegations not only of police inquiries about where Mr. Jones lived, Doc. 43 at 7–8, and an unlawful search at Mr.

9

Porwitzky's home related to Mr. Jones, *id.* at 15–16, but also of "APD police cruisers driving slowly by [Plaintiffs'] home on numerous occasions causing Plaintiffs to fear for their safety," *id.* at 15. Mr. Jones' addresses over the last ten years are a minimally burdensome inquiry and relate reasonably to the claims he brings.

Therefore, the Court grants the City's motion to compel with respect to Interrogatory No. 6.

Interrogatory No. 7

Interrogatory No. 7 asks each plaintiff, if his claims include emotional distress, to provide a complete list of healthcare providers over the last ten years along with their addresses, phone numbers, the reason for seeing that provider, and whether the provider treated him for damages related to the defendants' alleged actions. Doc. 40-1 at 7; Doc. 40-3 at 7. Mr. Jones objects to the interrogatory as "[u]nduly burdensome and overly broad and exceeds the limits of the claim of this Plaintiff." Doc. 40-1 at 7. Mr. Porwitzky states the same objection, but adds, "Plaintiff is a veteran and receives treatment via the Veteran's Administration and sought treatment in relation to the 1/3/25 incident." Doc. 40-3 at 7.

The District of New Mexico's Local Rules require disclosures in cases "in which the physical or mental medical condition of a party is at issue." D.N.M.LR-Civ. 26.3(d). Under those circumstances, "the party whose condition is an issue must make a good faith effort to produce" information including the names, addresses, and phone numbers of any healthcare providers who have treated the party within the five years "preceding the date of the occurrence set forth in the pleadings and continuing through the current date," all medical records from those healthcare providers that are already in the party's possession, and a signed authorization for each

healthcare provider to release medical records, which the party must make available for inspection and copying within fourteen days after receiving them. *Id*.

Interrogatory No. 7 includes a ten-year scope rather than the five-year scope dictated in D.N.M.LR-Civ. 26.3(d)(1). The City has made no argument regarding why a ten-year lookback period would be necessary in this case. Accordingly, the Court will grant the motion to compel in part regarding this interrogatory: plaintiffs are ordered to respond to the interrogatory only for the five years preceding the 1/3/25 incident (that is, beginning 1/3/2020) and continuing through to the present. If any plaintiff is not making a claim for emotional distress, he may satisfy this interrogatory by stating that fact in his supplemental interrogatory response.

Interrogatory No. 8

Interrogatory No. 8 asks for the plaintiffs' intended witness list, including witnesses' names, addresses, telephone numbers, and a summary of their proposed testimony. Doc. 40-1 at 7; Doc. 40-3 at 7. The plaintiffs do not object but instead refer to their proposed witness list as stated in the parties' joint status report, Doc. 26. Doc. 40-1 at 7; Doc. 40-3 at 7. This proposed witness list does not include a summary of each witness's proposed testimony. *See* Doc. 26 at 3–4.

Because plaintiffs have made no objection regarding the inclusion of this information, and because it is facially relevant (that is, likely to lead to the discovery of admissible evidence), the Court grants the City's motion to compel regarding Interrogatory No. 8. Plaintiffs are ordered to supplement their interrogatory with a summary of each witness's proposed testimony.

Interrogatory No. 9

Interrogatory No. 9 requests that plaintiffs "list each and every instance you claim you were damaged by the Defendants," including the date, the nature of the alleged damage, contact

information for the individual engaging in the alleged damage, a description of the action itself, and contact information for any witnesses. Doc. 40-1 at 8; Doc. 40-3 at 8. Plaintiffs object to the request as unduly burdensome and oppressive and instead refer the City to the joint status report, the complaint, and the exhibits to the complaint. Doc. 40-1 at 8; Doc. 40-3 at 8.

The Court disagrees that the interrogatory is unduly burdensome and oppressive. Plaintiffs are being asked to clarify the details of their claims and to provide contact information for alleged perpetrators and witnesses. If some of this information already appears in the complaint or joint status report, that makes plaintiffs' burden *lighter*, not heavier, because they already have gathered the information and can reproduce it easily in their interrogatory responses. Descriptions of the alleged actions beyond what appears in the complaint, if necessary, are not difficult or burdensome to produce, especially in a case involving only two major interactions[3] with the defendants.

Accordingly, the Court grants the City's motion to compel with regard to Interrogatory No. 9.

Interrogatory No. 10

Interrogatory No. 10 states, "Please list each and every time you have accused a third-party of violating your rights. With regard to each instance, please list the date, the name, address and telephone number of the third-party you accused of violating your rights, the conduct you claim violated your rights and the results of your complaint." Doc. 40-1 at 8; Doc. 40-3 at 8. The plaintiffs object to the discovery request as "unduly burdensome, oppressive, and vague,"

---

[3] The Court interprets the language of this question (instances in which the plaintiffs "claim" to have been damaged) as related to any instances supporting the claims at issue in this litigation. The Court instructs plaintiffs to answer this interrogatory based on this understanding of the question.

"unrelated to the events and parties at issue in this case," and "overly broad and encompasses casual conversations that are too numerous to recall." Doc. 40-1 at 9; Doc. 40-3 at 9. The City argues that the requested information "is relevant to assess the Plaintiffs' claims and alleged damages." Doc. 40 at 5.

A party's litigation history "is generally discoverable." *D'Agostino v. Domino's Pizza, Inc.*, 2020 WL 13614903, at *2 (D.N.J. Sept. 28, 2020); *see also Judy v. Pingue*, 2009 WL 2146209, at *3 (S.D. Ohio July 14, 2009) ("[W]here a party's litigation history is relevant to the motivations for filing suit, it may be relevant to the determination of the claim."). A plaintiff's litigation history may be discoverable if a defendant seeks to undermine the plaintiff's claim by arguing that the plaintiff "has a litigious history." *Bibbs v. New River Community & Technical College*, 285 F.R.D. 382, 393–94 (S.D.W.V. 2012); *see also Deakins v. Pack*, Case No. 1:20-cv-01396, 2012 WL 242859, at *17 (S.D.W.V. Jan. 25, 2012) ("The Court further finds that Interrogatory Number 3 requests relevant information. Defendants explain the information is relevant to their defense that Plaintiffs have a litigious history. Information concerning prior lawsuits filed by or against Plaintiffs is potentially admissible or could lead to admissible evidence."). Further, a party's litigation history is relevant because it may reveal instances of perjury or false statements, which are significant for impeachment purposes.

That said, the Court agrees with plaintiffs that the interrogatory is overbroad as written. As written, the interrogatory would include even informal, spoken complaints for which no records may exist, or minor disputes irrelevant to the present dispute, such as those related to customer service. Therefore, the Court will limit the interrogatory's scope only to written complaints (for example, complaint emails or cease-and-desist letters) pertaining to the plaintiffs' constitutional rights.

13

For the above reasons, the Court grants in part and denies in part the City's motion to compel regarding Interrogatory No. 10.

Interrogatory No. 11

Interrogatory No. 11 asks whether the plaintiff is claiming damages for emotional distress or psychological injuries; if yes, it asks for information about the plaintiff's physicians and mental health care providers. Doc. 40-1 at 9; Doc. 40-3 at 9. The plaintiffs refer to their responses to Interrogatory No. 7. Doc. 40-1 at 9; Doc. 40-3 at 9.

This interrogatory is different from Interrogatory No. 7; it requests more detail regarding the visit history, treatment plans, prognosis, and medications prescribed by any providers. Therefore, referring to Interrogatory No. 7 is insufficient as a response. The plaintiffs do not raise any objection to the information requested; they merely fail to provide it.

For the above reasons, the Court grants the City's motion to compel with regard to Interrogatory No. 11. If a plaintiff is not claiming damages of the type listed in Interrogatory No. 11, he may say so as a complete answer to the interrogatory. If he is claiming these damages, he must provide the requested information.

Interrogatory No. 12

Interrogatory No. 12 asks about the plaintiffs' criminal histories. Doc. 40-1 at 10; Doc. 40-3 at 10. Plaintiffs object that the interrogatory is "compound and unduly burdensome," that the information is publicly accessible to the defendants, and that the subject of the interrogatory is irrelevant. Doc. 40-1 at 10; Doc. 40-3 at 10.

The fact that information is publicly accessible to the party issuing the interrogatory is not a sufficient reason to refuse to answer the interrogatory. *Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (citing cases); *see*

14

*also Horton v. Tex. Federation for Children Pac, Inc.*, No. 3:22-cv-02736-D, 2024 WL 68572, at *5–6 (N.D. Tex. Jan. 5, 2024) ("[Plaintiff] cannot resist answering an interrogatory simply because it seeks public information."). Further, the plaintiffs' criminal history is relevant for impeachment purposes in conducting settlement evaluations and at trial. For example, a plaintiff with a long history of criminal convictions for fraud and perjury may be a less "believable" witness in the eyes of a jury than one without a history of dishonesty. The plaintiffs' criminal history also may be relevant because the case involves disputes regarding plaintiffs' interactions with law enforcement.

"Compound" interrogatories matter only if, by counting the separate parts of an interrogatory separately, a party exceeds the permissible number of interrogatories. Here, it appears that the City has issued eighteen interrogatories and is permitted to issue twenty-five. *See* Doc. 40-1; Doc. 40-3; Doc. 32 at 1 (permitting twenty-five interrogatories by each party to any other party). Therefore, whether the interrogatory is compound does not bear on whether it must be answered.

Finally, the Court finds that the interrogatory is not unduly burdensome. Plaintiffs are aware of their own criminal histories, if any, and providing basic information about any offenses such as relevant dates and case numbers normally does not require extensive research. Plaintiffs have not mentioned any reason why their criminal histories would be difficult to obtain; in fact, they note only that any such records would be public. Doc. 40-1 at 10; Doc. 40-3 at 10.

Accordingly, the Court grants the City's motion to compel as pertaining to Interrogatory No. 12.

15

Interrogatory No. 13

Interrogatory No. 13 requests information regarding any photographs or audio or video recordings of the events alleged in the complaint, or, in the alternative, an attached copy of that media. Doc. 40-1 at 10–11; Doc. 40-3 at 10–11. Plaintiffs object to the interrogatory as "overly broad, unduly burdensome, and compound" and refers to the video attached to the complaint. Doc. 40-1 at 11; Doc. 40-3 at 11.

The interrogatory is not overly broad. It asks if plaintiffs know of any photographs or recordings of the relevant incidents and, if they do, to provide a limited number of basic facts about the media, the person who took it, and the person who currently possesses it. The scope of the interrogatory is tailored directly to the claims and damages at issue. The complaint states, "Jones has been an avid supporter of recording video encounters with public officials, including peace officers, while in the performance of their official duties and has a YouTube channel[.]" Doc. 43 at 4. This renders it reasonable of the City to ask whether plaintiffs have, or know of, recordings of the events in this case, which involve encounters with public officials and peace officers.

Further, the interrogatory is not unduly burdensome. If plaintiffs took such photographs or recordings, it is easy to state their own names and addresses or attach the media to their interrogatory response. If plaintiffs know of anyone else's photographs or recordings, they must share what they know; if they do not know of anyone else's photographs or recordings, they need only say so.

As discussed above, whether an interrogatory is compound relates only to whether the number of permissible interrogatories has been exceeded. The City propounded eighteen interrogatories out of an available twenty-five, and plaintiffs do not argue that the compound

16

interrogatories include enough subcomponents to count as seven additional interrogatories on the list.

Accordingly, the Court grants the City's motion to compel regarding Interrogatory No. 13.

Interrogatory No. 14

Interrogatory No. 14 asks for information about all sources of plaintiffs' income over the last five years. Doc. 40-1 at 11; Doc. 40-3 at 11. Plaintiffs object that this information is irrelevant. Doc. 40-1 at 11; Doc. 40-3 at 11. The City argues that this information relates to plaintiffs' claim of damages. Doc. 40 at 6.

Income information is not automatically discoverable; it must be relevant to the claims, defenses, or damages at issue. *See White v. City of Grand Rapids*, No. 1:19-cv-00877, 2020 WL 13750048, at *2 (W.D. Mich. Oct. 1, 2020); *Continental Coal, Inc. v. Cunningham*, No. 06-cv-02122-KHV, 2007 WL 4241848, at *3 (D. Kan. Nov. 28, 2007). Here, plaintiffs seek compensatory damages. Doc. 43 at 19. But the complaint contains no allegations that plaintiffs' income was affected by the events giving rise to this litigation. That is, the complaint does not allege that the compensatory damages are related to a reduction in income. Based on the allegations in the complaint, the compensatory damages may be related to the cost of medical or mental health care. As a result, plaintiffs' income is not relevant to the question of damages.

Therefore, the Court denies the City's motion to compel regarding Interrogatory No. 14.

Request for Production No. 1

Request for Production No. 1 seeks all "statements, correspondence, memoranda, notes or other documents" related to the allegations in the complaint and alleged damages. Doc. 40-2 at 2; Doc. 40-4 at 2. Plaintiffs respond that all relevant documentation is attached to the

17

complaint. Doc. 40-2 at 2; Doc. 40-4 at 2. However, as the City notes, no records of Mr. Porwitzky's treatment at the Veterans' Administration hospital are attached to the complaint. Doc. 40 at 6. As discussed above, the plaintiffs may be claiming emotional distress or may seek compensatory damages related to medical care. Accordingly, the Court orders Mr. Porwitzky (and, if these documents are in his possession, Mr. Jones) to provide all relevant documentation related to the allegations in the complaint or damages, *specifically including* the VA treatment records for the visit mentioned in the complaint.

Request for Production No. 3 (Mr. Porwitzky only)

Request for Production No. 3 requests all documents referenced or relied upon in plaintiffs' interrogatory responses. Doc. 40-4 at 2. Mr. Porwitzky again refers to the attachments to the complaint without supplying additional attachments or information. *Id.* Mr. Porwitzky's interrogatory responses included reference to treatment at the Veterans' Administration. Doc. 40-3 at 7. Mr. Porwitzky did not supply records of that treatment in response to Request for Production No. 3 or in the attachments to the complaint. Doc. 40-4 at 2; *see generally* Doc. 43. The Court orders Mr. Porwitzky to provide all records of his treatment at the Veterans' Administration in relation to the January 3, 2025, incident.

Request for Production No. 6 (Mr. Porwitzky only)

Interrogatory No. 6 requests all medical and similar records pertaining to conditions resulting from the defendants' alleged actions. Doc. 40-4 at 3. Mr. Porwitzky responded by requesting an additional sixty days to obtain any such records. *Id.* at 4. Although the date of the request for production is not included, more than sixty days have elapsed since the filing of the motion to compel. *See* Doc. 40 (filed August 26, 2025). Accordingly, the Court orders Mr.

Porwitzky to supplement his response to Request for Production No. 6 with all requested information.

Request for Production No. 7

Request for Production No. 7 requests that the plaintiffs sign medical releases so the City may obtain the plaintiffs' medical and mental health records. Doc. 40-2 at 3; Doc. 40-4 at 3. The plaintiffs object "on the grounds that these medical release forms are being requested without restriction and will exceed the scope of this matter." Doc. 40-2 at 3; Doc. 40-4 at 3. They argue that the information is requested for an improper purpose and request an additional sixty days to obtain any relevant records. Doc. 40-2 at 3; Doc. 40-4 at 3.

Mr. Porwitzky has brought his health into the controversy by discussing his medical treatment related to the January 3, 2025, incident. *See* Doc. 43 at 15. Therefore, signing a medical release for all healthcare providers in the last five years preceding the date of the occurrence in the pleadings and continuing through the current date is required under D.N.M.LR-26.3(d)(3). The Court orders Mr. Porwitzky to do so[4] or to withdraw all claims and requests for damages based on his medical or mental health.

If a component of the plaintiffs' request for damages includes Mr. Jones' medical or mental health, the Court orders Mr. Jones to sign the form required by D.N.M.LR-Civ. 26.3(d). If damages related to Mr. Jones' medical and mental health are not a component of the plaintiffs' requested damages, Mr. Jones is ordered to state this in response to Request for Production No. 7 and is not obligated to sign a medical release.

---

[4] The attachments to the motion to compel do not include a copy of the form enclosed with the City's requests for production. The Court's order specifically applies to the form required by the local rules.

19

Request for Production No. 8

Request for Production No. 8 seeks "audio or video recordings, notes or other documents made during or as a result of any conversations you had with the Defendant or its agents or employees concerning the Plaintiffs' claims." Doc. 40-2 at 3; Doc. 40-4 at 3. Plaintiffs refer to Request for Production No. 1, which itself refers to the attachments to the complaint. Doc. 40-2 at 2–3; Doc. 40-4 at 2–3.

Recordings attached to the original complaint, which were lodged with the Clerk's Office, include a video of what appears to be plaintiffs' interaction with law enforcement at Civic Plaza in which they were issued a trespass citation for another property as well as an edited video including text commentary and body camera footage from two officers. Doc. 1, Exhibit # 2, Thumb Drive A (lodged with Clerk's Office). The plaintiffs' Second Notice of Lodging, filed May 2, 2025, contains a thumb drive with what appear to be the same videos. Doc. 19. Two copies of the Second Notice of Lodging, with two different thumb drives containing identical files, also are on file with the Clerk's Office.

If the recordings filed with the Clerk's Office are the only items meeting the description of Request for Production 8, plaintiffs may say so as their response to this request for production. If plaintiffs are in possession of other recordings, notes, or documents meeting the description of Request for Production 8, they are ordered to provide those items to the City.

Request for Production No. 9

Request for Production No. 9 seeks "photographs, films, charts, diagrams, and or video tapes depicting any of the matters alleged or described in the Complaint," including injuries or damages. Doc. 40-2 at 3; Doc. 40-4 at 3. Plaintiffs refer to Request for Production No. 1, which itself refers to the attachments to the complaint. Doc. 40-2 at 2–3; Doc. 40-4 at 2–3.

20

Recordings attached to the original complaint, which were lodged with the Clerk's Office, include a video of what appears to be plaintiffs' interaction with law enforcement at Civic Plaza in which they were issued a trespass citation for another property as well as an edited video including text commentary and body camera footage from two officers. Doc. 1, Exhibit # 2, Thumb Drive A (lodged with Clerk's Office). The plaintiffs' Second Notice of Lodging, filed May 2, 2025, contains a thumb drive with what appear to be the same videos. Doc. 19. Two copies of the Second Notice of Lodging, with two different thumb drives containing identical files, also are on file with the Clerk's Office.

If the recordings filed with the Clerk's Office are the only items meeting the description of Request for Production 9, plaintiffs may say so as their response to this request for production. If plaintiffs are in possession of other recordings, notes, or documents meeting the description of Request for Production 9, they are ordered to provide those items to the City.

Request for Production No. 11

Request for Production No. 11 seeks "[c]opies of all pleadings or administrative documents from any other criminal proceedings" or other lawsuits or actions in which plaintiffs were involved. Doc. 40-2 at 4; Doc. 40-4 at 4. Plaintiffs objected to the request as "overly broad, unduly burdensome," and irrelevant. Doc. 40-2 at 4; Doc. 40-4 at 4. As discussed above, the plaintiffs' criminal history is relevant for impeachment purposes. For example, a plaintiff with a long history of criminal convictions for fraud and perjury may be a less "believable" witness in the eyes of a jury than one without a history of dishonesty. The plaintiffs' criminal history also may be relevant because the case involves disputes regarding plaintiffs' interactions with law enforcement. Nor is the plaintiffs' criminal history unduly burdensome. Plaintiffs are aware of their own criminal histories, if any, and providing basic information about those offenses such as

21

relevant dates and case numbers normally does not require extensive research. Plaintiffs have not mentioned any reason why their criminal histories would be difficult to obtain; in fact, they note only that any such records would be public. Doc. 40-1 at 10; Doc. 40-3 at 10.

As for the non-criminal component of this request for production, as discussed above, a party's litigation history "is generally discoverable." *D'Agostino*, 2020 WL 13614903, at *2; *see also Judy*, 2009 WL 2146209, at *3. For example, a plaintiff's litigation history may be discoverable if a defendant seeks to undermine the plaintiff's claim by arguing that the plaintiff "has a litigious history." *Bibbs*, 285 F.R.D. at 393–94; *see also Deakins*, 2012 WL 242859, at *17. Previous civil litigation also may include information about perjury or false statements, which would be relevant to impeachment. The request for only the pleadings and administrative documents—not every single filing in every single case—limits the scope appropriately to prevent this interrogatory from becoming unduly burdensome or overbroad.

Accordingly, the Court orders plaintiffs to comply with Request for Production No. 11.

Request for Production No. 12

Request for Production 12 seeks "any and all of [plaintiffs'] social media posts over the past three years." Doc. 40-2 at 4; Doc. 40-4 at 4. Plaintiffs object to this inquiry as "overly broad, unduly burdensome," and irrelevant. Doc. 40-2 at 4; Doc. 40-4 at 4. Notwithstanding their objections, they state that they have provided their YouTube channels in the complaint. Doc. 40-2 at 4; Doc. 40-4 at 4.

Although social media generally is discoverable, multiple courts have found requests for *all* social media posts to be overbroad or unlikely to lead to the discovery of relevant information. *See Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 406 (D. Wyo. 2017); *Hardy v. N.J. Manufacturers Ins. Co.*, No. 22-cv-00153-SDD-RLB, 2022 WL 15446280, at *4–5 (M.D.

22

La. Oct. 26, 2022). Rather, requests for social media posts, like any other discovery, must relate to a party's claims or defenses. The City states that "the Defendants are entitled to see all posts related to them, third parties and which relate to the Plaintiffs' claim of damages." Doc. 40 at 7. The Court agrees that defendants are entitled to discovery of social media posts related to them, the claims at issue, and any damages plaintiffs assert they have suffered. Accordingly, the Court will tailor this request for production as follows:

Please produce all social media posts from January 1, 2024, to the present, which mention the government or public officials of the City of Albuquerque, any of the defendants in this case, the Albuquerque Police Department or its officers, and/or the events or damages at issue in this case.

Plaintiffs are ordered to comply with the Court's amended version of Request for Production No. 12.

Request for Production No. 13

Request for Production No. 13 seeks "[c]opies of all electronic communication between you and Basil Zangare from January 1, 2024, to present." Doc. 40-2 at 4; Doc. 40-4 at 4. Plaintiffs object, arguing that the request is "overly broad and unduly burdensome and irrelevant." Doc. 40-2 at 4; Doc. 40-4 at 4. Each plaintiff adds, "Notwithstanding, Plaintiff is acquainted with this person, but this individual is neither a witness, has no firsthand information regarding this matter, nor is he a party." Doc. 40-2 at 5; Doc. 40-4 at 5. In its motion, the City simply states that the "information requested is relevant and discoverable," but does not explain why the information is relevant. Because the Court sees no obvious relevance, the Court denies the City's motion to compel with respect to Request for Production No. 13.

23

Request for Production No. 14

Request for Production No. 14 seeks copies of all electronic communication between the plaintiffs from January 1, 2024, to the present. Doc. 40-2 at 5; Doc. 40-4 at 5. Plaintiffs object on the grounds that the request "is overly broad and unduly burdensome and irrelevant." Doc. 40-2 at 5; Doc. 40-4 at 5.

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" No privilege attaches to communications between co-plaintiffs in the absence of an attorney. *See People ex rel. Madigan v. Ill. High Sch. Ass'n*, No. 12-cv-03758, 2014 WL 517969, at *2 (N.D. Ill. Feb. 10, 2014) (common legal interest doctrine extends underlying attorney-client privilege or work product protections to communications involving a third party who shares a common legal interest with the client, but communications must have been privileged before the common interest arose for common legal interest doctrine to apply); *DeFazio v. Hollister, Inc.*, No. CIV S-04-1358 WBS GGH, 2008 WL 4952481, at *1–2 (E.D. Cal. Nov. 18, 2018) ("[T]he court finds that the common interest privilege does not extend to communications between co-plaintiffs where counsel is not present, or at the very least, where the specific conversation[] of the co-parties at issue was not expressly directed by counsel."); *Schachar v. Am. Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 193 (N.D. Ill. 1985) ("Again, the court knows of no privilege attending communications between co-plaintiffs in a civil action unless such actions were part of a joint communication with an attorney.").

Communications between the plaintiffs also are relevant to the claims or defenses at issue in this case. Relevance is broad: it includes information that "has a significant and demonstrable bearing on" any party's claim or defense. *See Doe v. Doe 2*, No. 1:20-cv-01041-SCY-JHR, 2023 WL 6381379, at *3 (D.N.M. Sept. 30, 2023); *see also* FED. R. EVID. 401 (relevant evidence is

24

that which "has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence"). The allegations in this case involve trespass citations for actions that both plaintiffs took together and Fourth Amendment concerns regarding a search of a house where (possibly) both plaintiffs were living. Communications between the individuals present during these interactions are likely to shed light on the details of the interactions and any damages that may have occurred. Additionally, the scope of time is limited, and plaintiffs have given the Court no reason to believe that producing the electronic communications between the two of them during the last two years would be unduly burdensome.

However, not *all* communications between the plaintiffs are relevant and proportional to the needs of the case. Interrogatory responses suggest that the plaintiffs live together; they may have communicated via text message, for example, about ordinary and irrelevant matters such as grocery purchases or weekend social plans. Accordingly, the Court will limit the scope of this interrogatory as follows:

Please provide copies of all electronic communication with your co-plaintiff from January 1, 2024, to the present, that pertains to the government or public officials of the City of Albuquerque, any of the defendants in this case, the Albuquerque Police Department or its officers, and/or the events or damages at issue in this case.

Plaintiffs are ordered to respond to the Court's amended version of Request for Production No. 14. If either plaintiff seeks damages for emotional distress, he also must include in his response any electronic communications with his co-plaintiff that reference his mood or mental state (whether emotionally distressed or otherwise).

Request for Production No. 15 (Mr. Jones only)

Request for Production No. 15 seeks "[c]opies of all your posts or videos concerning any of the Defendants from January 1, 2024, to present." Doc. 40-2 at 5. Mr. Jones responds, "Refer to Plaintiffs' response to Defendants' RFP 1 and RFP 9." *Id.* These responses, in turn, refer the City to the complaint and its attachments. *Id.* at 2–3.

Recordings attached to the original complaint, which were lodged with the Clerk's Office, include a video of what appears to be plaintiffs' interaction with law enforcement at Civic Plaza in which they were issued a trespass citation for another property as well as an edited video including text commentary and body camera footage from two officers. Doc. 1, Exhibit # 2, Thumb Drive A (lodged with Clerk's Office). The plaintiffs' Second Notice of Lodging, filed May 2, 2025, contains a thumb drive with what appear to be the same videos. Doc. 19. Two copies of the Second Notice of Lodging, with two different thumb drives containing identical files, also are on file with the Clerk's Office.

If the recordings filed with the Clerk's Office are the only items meeting the description of Request for Production 9, Mr. Jones may say so as his response to this request for production. If Mr. Jones is in possession of other posts or videos meeting the description of Request for Production 15, he is ordered to provide those items to the City.[5]

Request for Production No. 16

Request for Production No. 16 seeks "[c]opies of all of your electronic communication with any third party concerning the Defendants from January 1, 2024, to present." Doc. 40-2 at

---

[5] As a point of clarification, the Court notes that photos or videos "concerning" the City of Albuquerque as a defendant would not include every single photo or video taken within Albuquerque's city limits. Rather, media "concerning" the City of Albuquerque in this context includes photos or videos depicting governmental functions or public employees of the City of Albuquerque.

5; Doc. 40-4 at 5. Plaintiffs object to this request as "overly broad, unduly burdensome," and irrelevant. Doc. 40-2 at 5; Doc. 40-4 at 5.

As discussed above, relevance is broad. As is true of discussions between the co-plaintiffs, discussions between the plaintiffs and third parties concerning the defendants are likely to provide information about the claims or damages in this case. Additionally, the scope of time is limited, and plaintiffs have given the Court no reason to believe that they have engaged in so many electronic communications during the past two years that producing these communications would be unduly burdensome.

Accordingly, the Court grants the City's motion to compel with respect to Request for Production No. 16.[6]

## CONCLUSION

The Court grants in part and denies in part the City's motion to compel (Doc. 40). The full requirements appear in the body of this Memorandum Opinion and Order, but in summary, they are as follows.

As to the interrogatories, the Court grants the City's motion to compel with regard to Interrogatories No. 1, 3, 5, 6, 7 (in part), 8, 9, 10 (in part), 11, 12, and 13. The Court denies the City's motion to compel with regard to Interrogatories No. 2, 4, and 14.

As to the requests for production, the Court grants the City's motion to compel with regard to Requests for Production No. 1, 3, 6, 7, 8, 9, 11, 12 (in part), 14 (in part), 15, and 16. The Court denies the City's motion to compel with regard to Request for Production No. 13.

---

[6] In the interest of clarity, the Court adds that the contents of privileged communications (e.g., communications that plaintiffs had with an attorney with whom they consulted but did not become clients) need not be disclosed. If the plaintiffs have any responsive information that they believe is privileged, they are to follow the procedure outlined in Federal Rule of Civil Procedure 26(b)(5).

Plaintiffs must provide their supplemental responses to the City by March 25, 2026.

It is so ordered.

---

**THE PARTIES ARE NOTIFIED that pursuant to Local Rule 73.1(a), a magistrate judge is assigned to this case "to preside over all non-dispositive pre-trial matters in accordance with FED. R. CIV. P. 72(a)."  D.N.M.LR-Civ. 73.1(a).  "A party may serve and file objections to [a magistrate judge's order on a non-dispositive pre-trial matter] within 14 days after being served with a copy."  FED. R. CIV. P. 72(a).  The party's objections must be both timely and specific to preserve an issue for review by the district court or appellate court.  _United States v. One Parcel of Real Prop._, 73 F.3d 1057, 1060 (10th Cir. 1996).  If objections are timely filed, the district judge must consider the objections, but will only set aside those parts of the magistrate judge's order which are "clearly erroneous" or "contrary to law."  FED. R. CIV. P. 72(a).  If objections are not timely filed, the firm waiver rule applies.  _See Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd._, 989 F.3d 747, 781–83 (10th Cir. 2021) ("the firm waiver rule applies when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)").  "Under the firm waiver rule, a party who fails to make a timely objection to the magistrate judge's ruling waives appellate review of both the factual and legal questions."  _Id._ at 781 n.23 (citations and alteration omitted); _see also_ FED. R. CIV. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").**

---

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

28